## Billy Ray EUBANKS

v.

## ESENJAY PETROLEUM CORP.

Civ. A. Nos. 92–3150, 92–3152.

United States District Court,
E.D. Louisiana.

March 29, 1993.

Douglas Draper, Barbara Weiss, Friend, Wilson & Draper, New Orleans, LA, for plaintiff.

Robert Barkley, Jr., Barkley & Thompson, New Orleans, LA, Keith Remels, Jeffrey Pollicoff, Pollicoff, Smith & Myres, Houston, TX, for defendant.

### MEMORANDUM AND ORDER

SEAR, Chief Judge.

This is a consolidated appeal from two orders of the United States Bankruptcy Court for the Eastern District of Louisiana dismissing two adversary proceedings filed by debtor Billy Ray Eubanks against Esenjay Petroleum Corporation.[1] Eubanks filed

---

1. According to Eubanks' complaints, Esenjay filed for relief pursuant to Chapter 11 of the

for relief under Chapter 11 of the Bankruptcy Code on August 7, 1986. On February 15, 1990, Eubanks' plan of reorganization was confirmed by the bankruptcy court. The confirmation order was affirmed by this Court on August 28, 1990.

Eubanks' plan of reorganization provides, *inter alia*, that net income from producing oil and gas properties, after certain deductions are made, is to be deposited into a cash fund. Article 3.4 of Eubanks' Plan of Reorganization. Distributions to creditors are to be made from this cash fund. Article 3.5.

Both adversary proceedings concern events or omissions that occurred prior to the confirmation of the plan of reorganization. At issue are rights to property interests, typically leases, located in Jasper County, Mississippi.

The first adversary proceeding, filed on March 31, 1992, is a complaint for specific performance and accounting. *See* Complaint for Specific Performance and Accounting, Exhibit 1 attached to Memorandum in Support, Civil Action No. 92–3150. Eubanks alleges that pursuant to a Joint Operating Agreement ("Agreement") executed in 1964, Esenjay had an obligation to assign to other parties to the Agreement upon demand interests in any lease acquired within a defined "Joint Area" in Jasper County, Mississippi. Eubanks asserts that Esenjay first acquired property subject to the Agreement in 1987, and that Esenjay subsequently acquired a lease subject to the assignment provision of the Agreement in 1989. Eubanks seeks the assignment of an interest in the lease acquired by Esenjay in 1989 and also an

award of a percentage of the net proceeds attributable to the lease.

The second adversary proceeding, filed on April 27, 1992, seeks to rescind certain sales by Eubanks to Esenjay of property located within the Joint Area. *See* Complaint, Exhibit 1 attached to Memorandum in Support, Civil Action No. 92–3152. The complaint alleges that on December 16, 1988, the bankruptcy court authorized the sale by Eubanks to Esenjay of two oil and gas leases within the Joint Area. Eubanks then executed an assignment pursuant to the bankruptcy judge's order. Eubanks alleges that the records of the Chancery Clerk of Jasper County, Mississippi indicate that Esenjay caused to be recorded a transfer of property interests owned by Eubanks but not covered by the December 16, 1988, bankruptcy court order.

Esenjay moved to dismiss both claims for lack of subject matter jurisdiction. The bankruptcy court granted both motions, *see* Memorandum Opinions, Exhibits 3 attached to both Memorandum in Support, and these appeals followed. I conclude that while these adversary proceedings fall within the broad grant of bankruptcy jurisdiction set out in 28 U.S.C. § 1334(b), abstention pursuant to 28 U.S.C. § 1334(c)(1) is warranted by the facts and circumstances surrounding both proceedings.

*Discussion* [2]

**A. Bankruptcy Jurisdiction**

Eubanks' appeal requires a brief discussion of the difference between the bankruptcy jurisdiction of a district court and the judicial power of a bankruptcy court.

▪ The statutory grant of bankruptcy jurisdiction to *district courts* is found in 28 U.S.C. § 1334(a) and (b).[3] District courts

---

Bankruptcy Code on December 29, 1987. A plan of reorganization was subsequently confirmed, although the parties have not indicated when that event occurred. Eubanks contends that he was never listed as a creditor of Esenjay and was not placed on the mailing matrix. *See* Complaint for Specific Performance and Accounting, Exhibit 1 attached to Memorandum in Support, Civil Action No. 92–3150. Eubanks alleges that he only recently became aware of the operative facts giving rise to the claims asserted in these two adversary proceedings.

2. Questions of law are reviewed *de novo* on appeal. *See, e.g., FRG, Inc. v. Manley,* 919 F.2d 850, 854 n. 8 (3rd Cir.1990).

3. Section 1334, Title 28 of the United States Code, states,

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court

have exclusive and original jurisdiction of all cases *under* Title 11 of the United States Code (i.e. the Bankruptcy Code). 28 U.S.C. § 1334(a). District courts have original and concurrent jurisdiction over "all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). Consequently, it is irrelevant whether a particular proceeding is "core" or "non-core" if the inquiry is whether that proceeding falls within the scope of 28 U.S.C. §§ 1334(a) and (b).

■ Although district courts have full judicial power over all matters within the scope of §§ 1334(a) and (b), these matters typically are referred to the bankruptcy court of each district pursuant to 28 U.S.C. § 157(a),[4] which was passed as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See generally Matter of Wood*, 825 F.2d 90, 91 (5th Cir. 1987) (Wisdom, J.). This district is no exception. *See* Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, for cases filed in the Eastern District of Louisiana, filed August 2, 1984; Order of Reference of Bankruptcy Cases and Proceedings, for cases filed in, transferred to, or removed to the Eastern District of Louisiana, filed April 11, 1990. Proceedings outside the scope of 28 U.S.C. § 1334(a) and (b) cannot be referred to a bankruptcy court by a district court pursuant to 28 U.S.C. § 157.

■ Section 157 is the legislative progeny of the Supreme Court's decision in *Northern Pipeline v. Marathon*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (holding unconstitutional the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549). Section 157 divides matters within the scope of §§ 1334(a) and (b) into "core" and "non-core" proceedings. Bankruptcy courts are given full judicial power over core proceedings. 28 U.S.C. § 157(b). Non-core proceedings that are "otherwise related to a case under title 11" may be heard by a bankruptcy judge, but any final order or judgment must be entered by the district judge. 28 U.S.C. § 157(c).[5] The initial determination of whether a proceeding referred to a bankruptcy court is "core" or "non-core" is made by the bankruptcy judge. 28 U.S.C. § 157(b)(3).

Accordingly, it is necessary here to first determine whether Eubanks' adversary proceedings fall within the scope of 28 U.S.C. §§ 1334(a) and (b). Once that determination is made, then it is proper to identify the proceedings as either "core" or "non-core but related" matters.[6]

■ Section 1334(a) refers to "cases under title 11." Although the exact boundaries of a case *under* Title 11 have not been precisely defined,[7] Eubanks' adversary proceedings clearly are not cases *under* Title 11. The outer perimeter of

---

or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11....

**4.** Section 157(a), Title 28 of the United States Code, states,

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

A district court, *sua sponte*, may withdraw, in whole or in part, any case or proceeding referred to the bankruptcy court under 28 U.S.C. § 157(a). 28 U.S.C. § 157(d).

**5.** ·By consent of the parties, a non-core but related proceeding may be determined by the bankruptcy judge. 28 U.S.C. § 157(c)(2).

**6.** The Fifth Circuit in *Wood* outlined the analysis as follows:

[W]e must decide two issues: first, whether bankruptcy jurisdiction exists; second, *if jurisdiction does exist*, whether the bankruptcy court may proceed over this matter as a "core" or a "non-core" proceeding.
*Wood*, 825 F.2d at 91 (emphasis added).

**7.** *See* 1 Collier on Bankruptcy, ¶ 3.01, at 3–21 (15th ed. 1992) ("The 'case' referred to in section 1334(a) is the case upon which all of the proceedings which follow the filing of a petition are predicated. The filing of a petition for relief constitutes commencement of the title 11 case. From the beginning follow all of the proceedings, whether called controversies, contested matters, suits, actions or disputes, that will occur in the unfolding of the case under the Bankruptcy Code."); *see also Wood*, 825 F.2d at 92 (case *under* title 11 "refers merely to the bankruptcy petition itself.").

§ 1334(b), covering proceedings *arising under* Title 11, *arising in* a case under Title 11, or *related to* a case under title 11,[8] has been delineated by the following test:

> [W]hether the outcome of the proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.

*Wood*, 825 F.2d at 93 (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984) (emphasis added)).

 Unfortunately, the reference to the "estate" in the *Wood* test leads to some confusion since, normally, the debtor's "estate" ceases to exist once a plan of reorganization is confirmed by the bankruptcy court. *See* 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."); *U.S. v. Unger*, 949 F.2d 231, 233 (8th Cir.1991). However, there is no dispute that a bankruptcy court's jurisdiction, which is derivative of the jurisdictional grant in §§ 1334(a) and (b), continues post-confirmation "to protect its [confirmation] decree, to prevent interference with the execution of the plan and to aid otherwise in its operation." *In re Dilbert's Quality Supermarkets, Inc.*, 368 F.2d 922, 924 (2nd Cir.1966).[9] *See also In re Almarc Corp.*, 94 B.R. 361, 365 (Bkrtcy.E.D.Pa. 1988).

In *In re Cinderella Clothing Industries, Inc.*, 93 B.R. 373, 377 (Bkrtcy.E.D.Pa.1988), the court observed,

Whether emanating from the general power of courts to enforce their decrees, *see generally* 11 U.S.C. § 105(a); *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 373–74 (5th Cir.1987) (*en banc*), *aff'd sub nom, United Sav. Assoc. v. Timbers of Inwood Forest Assocs., Ltd.*, [484 U.S. 365] 108 S.Ct. 626 [98 L.Ed.2d 740] (1988); *In re Chinichian*, 784 F.2d 1440, 1442–43 (9th Cir.1986), or from specific bankruptcy code sections such as 11 U.S.C. § 1112 (allowing for conversion or dismissal after confirmation), § 1127 (allowing for plan modification after confirmation), § 1142 (allowing for plan enforcement post-confirmation), and § 1114 (allowing for revocation of confirmation), there exists a residue, albeit limited, of court authority over a confirmed chapter 11 case. *See, e.g., Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228 (4th Cir.1987) (jurisdiction retained under § 1127); *In re Harlow Properties, Inc.*, 56 B.R. 794 (B.A.P. 9th Cir.1985) (creditors may obtain specific performance against debtors pursuant to § 1142).

The exact extent of a district court's[10] post-confirmation jurisdiction over a chapter 11 case has been a source of disagreement among courts as they have attempted to balance the need to retain jurisdiction post-confirmation with the need to end the reorganization process at some time. *See generally, In re Pioneer Inv. Services Co.*, 141 B.R. 635, 640–41 (Bkrtcy.E.D.Tenn. 1992); *In re Cinderella, supra* at 376–77.

---

**8.** For purposes of defining the scope of § 1334(b), it is not necessary to distinguish between cases arising under Title 11, proceedings arising in a case under Title 11, and proceedings related to a case under Title 11. *Wood*, 825 F.2d at 93 ("These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.").

**9.** The Second Circuit, in *North American Car Corp. v. Peerless Weighing & Vending Machine Corp.*, 143 F.2d 938, 940 (2nd Cir.1944), cautioned that a district court's bankruptcy jurisdiction is not without limits:

> We have had occasion before to deplore the tendency of District Courts to keep reorganized concerns in tutelage indefinitely by orders purporting to retain jurisdiction for a

variety of purposes, extending from complete supervision of the new business to modifications of detail in the reorganization ... Since the purpose of reorganization is clearly to rehabilitate business and start it off on a new and to-be-hoped-for more successful career, it should be the objective of courts to cast off as quickly as possible all leading strings which may limit and hamper its activities and throw doubt upon its responsibility. It is not consonant with the purposes of the Act, or feasible as a judicial function, for courts to assume to supervise a business somewhat indefinitely.

**10.** Although the cases speak in terms of a bankruptcy court's post-confirmation jurisdiction, they are relevant to the determination of whether post-confirmation jurisdiction exists pursuant to 28 U.S.C. §§ 1334(a) and (b). *See* 28 U.S.C. § 157(a).

The Fifth Circuit in *Wood,* however, has stated its intention that the jurisdictional grant of §§ 1334(a) and (b) is to be construed as broadly as possible. *Wood,* 825 F.2d at 93 (jurisdiction exists if the "outcome of [the] proceeding could *conceivably* have any effect on the estate being administered in bankruptcy") (*quoting Pacor,* 743 F.2d at 994 (emphasis added)).[11] This liberal interpretation of the jurisdictional grant has been noted favorably· by a leading commentator on bankruptcy law. 5 Collier on Bankruptcy, ¶ 1142.01, at 1142–3 (15th ed. 1992) ("So long as a chapter 11 case is 'open,' there does not appear to be any limit on the court's jurisdiction under ·28 U.S.C. § 1334(b) with respect to civil proceedings arising under title 11 or arising in or related to cases under title 11.").[12]

It therefore appears that bankruptcy jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and (b) extends to proceedings that have a *"conceivable* effect upon the administration of a bankruptcy case." *In re Almarc Corp.,* 94 B.R. at 365. Proceedings that ·have a conceivable effect on the debtor's ability to consummate the confirmed plan fall within the jurisdictional grant. *Id.; see also In re Pioneer,* 141 B.R. at 641; *In re Greenley Energy Holdings of Pennsylvania, Inc.,* 110 B.R. 173, 184 (Bkrtcy.E.D.Pa. 1990) (disputes that affect operation of confirmed plan as between interested parties, as well as patent ambiguities in the confirmed plan, are within bankruptcy jurisdiction).

■ Eubanks' first adversary proceeding, claiming an interest pursuant to the Agreement in a lease obtained by Esenjay in 1989, could have a conceivable effect on Eubanks' ability to consummate the plan of reorganization. Eubanks' right to an interest in the lease allegedly arises out of his ownership of property interests within the Joint Area and subject to the Agreement. These property interests became part of Eubanks' estate upon the filing of Eubanks' Title 11 petition. 11 U.S.C. § 541(a)(1). Eubanks' complaint alleges that Esenjay was obligated by the Agreement to offer Eubanks an interest in the lease Esenjay acquired in 1989; had Esenjay made such an offer and had Eubanks accepted, the interest in the Esenjay lease would have become part of Eubanks' estate. 11 U.S.C. § 541(a)(7). More importantly, any net income from the interest in the Esenjay lease that Eubanks is claiming would be used to consummate the plan.

Similarly, Eubanks' second complaint alleges that property that otherwise was part of his estate was fraudulently transferred to Esenjay sometime after December 1988. This transfer was purportedly pursuant to the bankruptcy court's December 16, 1988, order. In brief, Eubanks accuses Esenjay of stealing his property. Not only was the allegedly converted property part of Eubanks estate, but any net income from this property would be used to consummate Eubanks plan of reorganization.

Under the broad definition of bankruptcy jurisdiction articulated by the Fifth Circuit in *Wood,* I conclude that Eubanks adversary proceedings fall within the bankruptcy jurisdiction set forth in 28 U.S.C. § 1334(b).

**B. Abstention**

Section 1334(c)(1), Title 28 of the United States Code states,

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or ˍarising in or related to a case under title 11.[13]

---

11. Subsequently, the Fifth Circuit stated that bankruptcy jurisdiction exists if the "outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate." *Matter of Majestic Energy Corp.,* 835 F.2d 87, 90 (5th Cir.1988).

12. Eubanks also contends that a reservation of jurisdiction in his plan of reorganization itself confers bankruptcy court jurisdiction over these adversary proceedings. I do not reach this issue.

13. Section 1334(c)(1) does not allow a district court to abstain in "cases under title 11." Abstention under 28 U.S.C. § 1334(c)(2) is not applicable to these adversary proceedings. *See* 1

The Fifth Circuit in *Wood* acknowledged that its broad interpretation of 28 U.S.C. § 1334 would "bring into federal court matters that should be left to state courts to decide." *Wood,* 825 F.2d 90, 93. Accordingly, the court observed that district courts have the "broad power to abstain [in a bankruptcy case] whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Id.* (quoting 28 U.S.C. § 1334(c)(1)).[14] Because abstention is appropriate under the facts and circumstances of this case, I do not reach the question of whether the adversary proceedings are "core" or "non-core" proceedings. *See* 28 U.S.C. § 157.

 Eubanks adversary proceedings are at heart state law claims rather than federal claims. All the property in question is located in Jasper County, Mississippi. The Joint Operating Agreement, including the assignment provision at issue in the first adversary proceeding, will be interpreted according to state law. The transfer of Eubanks' property subsequent to the December 15, 1988, order by the bankruptcy court was apparently conducted under state law.[15] While the presence of state law issues does not preclude bankruptcy jurisdiction, the fact that the resolution of these adversary proceedings will turn entirely on state law is relevant to the determination whether abstention is appropriate. *Cf. In re Republic Reader's Service, Inc.,* 81 B.R. 422, 429 (Bkrtcy.S.D.Tex. 1987) (*citing Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940)).

Moreover, the torturous procedural history of Eubanks' claims against Esenjay cries out for abstention in the interest of justice. These consolidated proceedings are but one of *four* proceedings in which Eubanks' claims against Esenjay have been raised. The first proceeding was filed by Conquest Exploration Company ("Conquest") and New York Life Oil and Gas Operating Production Partnerships ("NYLOG") against Esenjay in the 157th District Court of Harris County, Texas ("Texas case"). The plaintiffs asserted numerous claims similar to those brought by Eubanks in these proceedings, including the claim that Conquest and NYLOG have rights to oil and gas interests in the Joint Area in Jasper County, Mississippi. Although Eubanks was not originally a party to the Texas case, Eubanks has intervened in the Texas case and has asserted his claims against Esenjay.

A second proceeding was filed by Esenjay in June 1992 against Eubanks, Conquest, NYLOG, and the American Exploration Company in the Chancery Court for the 2nd Judicial District of Jasper County, Mississippi ("Mississippi case"). This case involves the same claims being asserted here by Eubanks. The Mississippi case has been stayed in favor of the Texas case; Eubanks filed an election in the Mississippi case to subject all his claims against Esenjay to the jurisdiction of the Texas court.

A third action, which is essentially a parallel proceeding to these adversary proceedings, was filed by Eubanks against Esenjay in Louisiana state court. This case was removed to this Court by Esenjay, and the parties agreed to administratively close this case in favor of the Texas case.

Collier on Bankruptcy, ¶ 3.01, at 3–77 (15th ed. 1992).

**14.** "The decision to grant ... abstention ... lies in the power of the district court and we will not reverse that decision unless the district court clearly abuses its discretion." *Matter of Howe,* 913 F.2d 1138, 1143 (5th Cir.1990).

**15.** According to Eubanks' complaint, a description of the two property interests (i.e. two leases) that Eubanks was authorized transfer was attached to the bankruptcy court's December 16, 1988, order. *See* Complaint, ¶ 10, Exhibit 1 attached to Memorandum in Support, Civil Action No. 92–3152. Eubanks alleges that he subsequently executed an assignment of property to Esenjay and attached to that assignment the same description that was attached to the December 16, 1988, order. *Id.* at ¶ 11. Eubanks alleges that a *different* description, describing property not authorized to be transferred, was then attached to the assignment before the assignment was recorded in Mississippi. *Id.* at ¶ 13. Thus, the complaint alleges that the assignment executed by Eubanks, and not the order of the bankruptcy court, was improperly altered.

Therefore, with the exception of these adversary proceedings filed in bankruptcy court, Eubanks' claims against Esenjay are now being determined in one forum rather than in three. Eubanks himself has already agreed to defer prosecuting his claim in two other forums in favor of the Texas proceedings. I can discern no benefit, either to the judicial system or to the parties, in maintaining yet another forum for these claims.

Accordingly,

IT IS ORDERED that the orders of the bankruptcy judge granting defendant's motions to dismiss are REVERSED.

IT IS FURTHER ORDERED that pursuant to 28 U.S.C. § 157(d), the reference of plaintiff's adversary proceedings to the bankruptcy court is WITHDRAWN.

IT IS FURTHER ORDERED that pursuant to 28 U.S.C. § 1334(c)(1), plaintiff's adversary proceedings are stayed pending resolution of related proceedings in Texas state court.

IT IS FURTHER ORDERED that the Clerk of Court mark this action closed for statistical purposes. The parties shall inform the Court when proceedings in the Texas state court action are completed.