**In re MAI SYSTEMS CORPORATION, Debtor.**

**MAI SYSTEMS CORPORATION, Plaintiff,**

v.

**C.U. TECHNOLOGIES, INC., Nanook Enterprises, Inc., The Computer Group, Ltd., Armond Schroeder, Computer Systems Management, Donald Bonfanti, Hector G. Pabon, Pablo M. Guzman, Carlos J. Molina Ramos, and Does I–XXV, Defendants.**

Bankruptcy No. 93–424.
Adv. No. 93–159.

United States Bankruptcy Court, D. Delaware.

Feb. 9, 1995.

Laura Davis Jones, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for debtor.

John D. Demmy, Morris, James, Hitchens & Williams, Wilmington, DE, for C.U. Technologies, Inc., Nanook Enterprises, Inc., The Computer Group, Ltd. and Armond Schroeder.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Chief Judge.

In this adversary proceeding, four of the defendants, C.U. Technologies, Inc. (CUT), Nanook Enterprises, Inc., The Computer Group, Ltd., and Armond Schroeder ("the CUT group"), move to dismiss pursuant to Bankruptcy Rules 7012(b)(1) and 7012(b)(6). The CUT group moves in the alternative to transfer venue to the United States District Court for the Central District of California. There are also pending in MAI's Chapter 11 case several other adversaries filed by MAI. The defendants in three of those adversaries have filed similar motions raising similar issues. The briefing in those adversaries has been fully considered. This is the court's decision on the motions to dismiss of the CUT group. In Section III, the alternative motion of the CUT group to transfer venue is discussed.

### I. *Facts*

The record on the motions to dismiss consists of the well-pleaded allegations in the complaint, and matters of public record. *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

On April 12, 1993, MAI Systems Corporation filed a voluntary petition for relief under Chapter 11. MAI filed schedules listing total assets of over $36 million and total liabilities of over $111 million. This court approved MAI's First Amended Disclosure Statement on October 19, 1993, and MAI's First Amended Joint Chapter 11 Plan of Reorganization on November 18, 1993. The plan became effective on January 27, 1994. Case no. 93–424, docket no. 424 at 5. The plan merges two subsidiary debtors into the estate of MAI. Posteffective date, the reorganized MAI will operate in North America and Latin America, and will offer products and services relating to computer hardware, software, maintenance and related support. Case no. 93–424, docket no. 321 at 34–39.

On December 30, 1993, before the effective date of the joint plan, MAI filed a complaint which alleges the following facts. MAI owns software programs and related documentation ("the programs"), and copyrights, trademarks, trade secrets and other interests ("the interests") for use by credit unions. In a May 22, 1991 agreement, MAI granted CUT a license to the programs in exchange for certain acts by Nanook, CUT, and The Computer Group (TCG). In furtherance of the license, MAI entered into ancillary agreements with CUT, Nanook, and TCG. MAI also extended credit to TCG pursuant to the May 1991 license, and loaned equipment to Nanook pursuant to a related agreement. Armond Schroeder is the principal shareholder of Nanook, CUT and TCG.

Commencing on October 31, 1991 (prepetition), Nanook, CUT and TCG breached the agreements by failing to pay royalties and credit obligations, failing to act in accordance with contract terms, and failing to cooperate with MAI's collection efforts. On February 26, 1992, MAI served written notice of breach upon Nanook, CUT and TCG,

and demanded cure. After no cure was made, MAI terminated their contracts and demanded performance of certain obligations. Nanook, CUT and TCG retained possession, use and licensing of MAI's programs and related materials and shared these items with third parties. These third parties include named defendants Computer Systems Management, and Does I—XXV, who are other unknown retailers of technology. These defendants continue to use and disclose the programs and interests in violation of contract terms.

The complaint further alleges that on October 19, 1993, Nanook, CUT and TCG encouraged Hector G. Pabon, Pablo M. Guzman, Carlos J. Molina Ramos, three MAI employees located in Puerto Rico, to terminate their employment contracts with MAI and join Nanook, CUT and TCG in marketing MAI's programs and interests.

In eleven counts, MAI seeks compensation from the CUT group and other defendants for breach of contract, misappropriation of trade secrets, unfair competition, tortious interference with employment contracts, and engaging in a conspiracy to commit the above illegal acts. The record does not indicate the magnitude of these sought damages. MAI also alleges that the CUT group owes MAI $302,696.89 for unpaid goods and services.[1] The complaint also seeks related injunctive relief.

## II. *Discussion of the Motion to Dismiss*

### A. *This Court Has Subject Matter Jurisdiction Over the Adversary Proceeding.*

■ The CUT group first moves this court to dismiss MAI's adversary proceeding for lack of subject matter jurisdiction. Fed. R.Bankr.P. 7012(b)(1). This motion to dismiss will be granted if MAI fails to satisfy its burden that this court has subject matter jurisdiction over this proceeding. *Koch v. U.S.*, 814 F.Supp. 1221, 1226–27 (M.D.Pa. 1993). In a nutshell, the CUT group's Rule 7012(b)(1) motion argues that this adversary

proceeding is outside the scope of a bankruptcy court's post-confirmation jurisdiction. Pursuant to 28 U.S.C. § 1334(b), the United States District Court for the District of Delaware has original jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." The United States District Court for the District of Delaware has referred its jurisdiction to this court. 28 U.S.C. § 157(a); *In re Referral of Title 11 Proceedings to the United States Bankruptcy Court for This District,* (D.Del. June 13, 1994) (order). In this Circuit, the above quoted language of section 1334(b) is to be construed very broadly. *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984) (district court has jurisdiction over any proceeding that could conceivably have any effect on the estate being administered in bankruptcy). Nothing in the language of 28 U.S.C. § 1334 limits this broad grant of jurisdiction to pre-confirmation proceedings. From these underpinnings, it has been carefully and properly concluded that post-confirmation, a bankruptcy court may retain jurisdiction over any proceeding that conceivably could affect the debtor's ability to consummate the confirmed plan. *Eubanks v. Esenjay Petroleum Corp.,* 152 B.R. 459, 464 (E.D.La.1993) (relying in part on the *Pacor* reasoning).

The CUT group has cited court decisions it argues support a narrower view of post-confirmation jurisdiction. To be sure, each of those decisions articulated a definition of post-confirmation jurisdiction different from that employed in *Eubanks*—and each other. And it is true that there is some disagreement as to the scope of post-confirmation jurisdiction. *See generally Eubanks,* 152 B.R. at 463; Symposium, *Postconfirmation Issues: The Effects of Confirmation and Postconfirmation Proceedings,* 44 S.C. L.Rev. 621, 622–44 (1991) (analyzing the divergence of views on the scope of post-confirmation jurisdiction). None of these conceptual differences are relevant here. The reasoning of the cases upon which the CUT group relies are very fact-specific, and the

---

**1.** MAI asserts, without support, that the total amount sought in the complaint is less than $360,000.

material facts in those cases are different than the facts here.

Here, the complaint alleges events occurring and causes of action arising pre-petition and pre-confirmation. The debtor is one of the parties to the lawsuit. The defendants either were employees of MAI, had a pre-petition business relationship with MAI, or were misappropriating property of the debtor. The complaint alleges ongoing wrongful conduct and seeks injunctive relief.

Thus, this court is not persuaded that any of the courts that the CUT group relies upon would find, as a matter of law, that a bankruptcy court does not have jurisdiction over this adversary proceeding.[2] On this record, this proceeding could affect MAI's ability to consummate the confirmed plan. This court has subject matter jurisdiction over this adversary proceeding.

### B. MAI's Complaint Does Not Fail to State a Claim.

The CUT group next contends that MAI's cause of action should be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Bankr.P. 7012(b)(6). Specifically, the CUT group asserts that the affirmative defenses of judicial estoppel and res judicata bar the claims MAI asserts in its complaint.[3]

■ In deciding the motion to dismiss under Bankruptcy Rule 7012(b)(6), the court should not dismiss any claim unless it appears beyond doubt that MAI can provide no set of facts in support of that claim which would entitle it to relief. *E.g., Matter of Reitz*, 134 B.R. 131, 132 (Bankr.D.Del.1991).

### 1. Judicial Estoppel Does Not Apply Here.

■ The CUT group's first affirmative defense is that judicial estoppel applies to preclude MAI from prosecuting this adversary proceeding. Judicial estoppel precludes a party from asserting a position which is inconsistent with one previously taken in a prior proceeding. *See generally Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 512–13 (3d Cir.1953). The CUT group contends that MAI's pre-confirmation and post-confirmation positions are inconsistent. It refers to MAI's disclosure statement and plan, which did not individually list MAI's post-confirmation actions. The CUT group argues that this omission constitutes MAI's position that no such actions existed. It further argues that MAI's subsequent filing of this action is a change of position.

In support of these arguments, the CUT group first relies upon *Oneida Motor Freights, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). In *Oneida*, United Jersey Bank was a creditor which post-petition but pre-confirmation had extensively litigated claims with the debtor Oneida Motor Freight pertaining to loan agreements. The parties eventually reached a settlement, and the court entered an order which required the debtor to pay the bank $7.7 million. The debtor never mentioned a setoff claim. Thereafter, the bank voted in favor of the plan. Seven months after confirmation of the plan, the debtor sued the bank for breach of contract on the same loan agreements subject to the earlier litigation. The suit asserted the breach was the catalyst for Oneida's Chapter 11 filing. *Id.* at 416, 420. The court focused the majority of its analysis on equitable estoppel and held that Oneida was precluded from litigating the breach of contract action.

In a relatively short analysis, the court held that judicial estoppel also precluded

---

**2.** A listing of some of the decisions of those courts with a parenthetical is sufficient to establish this point: *In re Jewelcor, Inc.*, 150 B.R. 580, 583 (Bankr.M.D.Pa.1992) (finding of no jurisdiction based on limited jurisdiction retention provisions in confirmed plan); *In re Bankeast Corp.*, 132 B.R. 665, 667 (Bankr.D.N.H.1991) (jurisdiction *exists* over causes of action of or against the debtor existing pre-confirmation); *In re Greenley Energy Holdings of Pa.*, 110 B.R. 173, 184 (Bankr.E.D.Pa.1990) (no post-confirmation juris-

diction over complaint involving solely "issues between non-debtor parties involving property *after* it ha[d] left the estate").

**3.** MAI has not asserted that this court should not consider these affirmative defenses on this motion to dismiss. *See Adams v. Gould Inc.*, 739 F.2d 858, 870 n. 14. (3d Cir.1984) (certain affirmative defenses may be asserted on a motion to dismiss).

Oneida from proceeding with the action. However, the court did not create a broad rule of the type the CUT group asserts here. Rather, the *Oneida* court limited its holding to the facts before it, stating:

> Although we stop short of finding that, as the bank urges, Oneida's prior silence is equivalent to an acknowledgement that it did not have a claim against the bank, we agree that its current suit speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed.

*Oneida*, 848 F.2d at 419. The *Oneida* court focused on the similarity, both factual and legally, between the claims raised in the action, and the matters addressed in the bankruptcy proceeding. *Id.* at 419–20. Thus, the court was careful to consider all the circumstances before concluding that the debtor's breach of contract action contradicted the debtor's pre-confirmation position.

The circumstances relating to the pre-confirmation conduct of the Oneida debtor were significantly different from the circumstances in the MAI Chapter 11 case. In the *Oneida* case, the loan agreements had previously been the subject of two contested matters pre-confirmation, each giving the debtor an opportunity to raise its claim. 848 F.2d at 418–19.[4] This proceeding does not involve transactions which were previously litigated in the bankruptcy case. *Oneida* does not support the CUT group's position.

Similarly, the other authorities the CUT group cites do not support its position. In those cases, the debtor's post-confirmation actions clearly constituted changes in position. For example, in *Payless Wholesale Dist., Inc. v. Culver*, 989 F.2d 570, 571 (1st Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993), the court dismissed a post-confirmation action because the debtor committed "unacceptable abuse of judicial proceedings" by obtaining Chapter 11 relief on the representation that no claims existed and later alleging that the defendant's actions were the direct cause of the

bankruptcy filing. And in *In re Galerie Des Monnaies, Ltd.*, 55 B.R. 253 (Bankr.S.D.N.Y. 1985), *aff'd* 62 B.R. 224 (S.D.N.Y.1986), the court dismissed a post-confirmation preference action against a creditor who had voted in favor of plan when the disclosure statement stated that the debtor knew of no actionable preference claims.

In summary, considering all the circumstances, MAI's current position as expressed in its complaint is not inconsistent with its pre-confirmation position. On the record before this court, judicial estoppel does not apply.

### 2. The Doctrine of Res Judicata Does Not Bar This Action.

██ The CUT group also argues that confirmation of MAI's plan operates as res judicata and bars this action. Res judicata bars parties from relitigating issues that were or could have been raised in a previous action and which resulted in a final judgment on the merits. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981). In their briefs, the parties have argued whether the CUT group can satisfy the standard that must be satisfied to invoke this doctrine. The parties state that the standard is:

(1) a final decision on the merits in the first action by a court of competent jurisdiction;

(2) the second action involves the same parties, or their privies, as the first;

(3) the second action raises an issue actually litigated or which should have been litigated in the first action; and

(4) the second action shares an identity with the first cause of action.

*Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir.1992) (applying res judicata to bar post-confirmation lender liability action of parent of a debtor against debtor's lender), *cert. denied*, —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). Individual discussion of

---

**4.** The two matters were a motion by the bank for relief from the automatic stay, and the debtor's motion to use the bank's cash collateral. 848 F.2d at 415. The *Oneida* court also pointed to four separate orders that the bankruptcy court entered regarding the validity, priority and extent of the bank's claim against the debtor. In connection with each order, the debtor was silent as to the existence of its claim against the bank. *Id.* at 419.

each of those four requirements is not merited, as none of these requirements are satisfied.[5]

This is not surprising, as there exists a threshold problem concerning the application of res judicata to the circumstances here. The doctrine of res judicata (or claim preclusion) has typically been applied where a contested matter or an adversary proceeding arising in a Chapter 11 bankruptcy proceeding provided an opportunity to litigate a claim. In MAI's Chapter 11 case, however, there was no contested matter or adversary proceeding raising the claims underlying MAI's complaint, and that was adjudicated on the merits prior to the filing of the present complaint on December 30, 1993.

To circumvent this threshold problem, the CUT group asserts that the plan confirmation hearing is the "action," and that the confirmation order bars any claim of the debtor that could have been raised in that confirmation proceeding not expressly reserved in the plan of reorganization.

In support of this asserted rule, the CUT group relies upon *Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869 (2d Cir.1991). In that case, Sure–Snap's confirmed plan determined the right and amount to be paid to State Street Bank, Sure–Snap's pre-petition lender. Post-confirmation, the debtor Sure–Snap filed a complaint against State Street and another bank alleging tortious banking practices and related lender liability theories. In particular, the complaint alleged that pre-petition, State Street had suddenly terminated Sure–Snap's line of credit, and forced the company into bankruptcy. This same claim had appeared in a disclosure statement. *Id.* at 871. The court emphasized the close relation between the allegations of the complaint, and the focus of Sure–Snap's plan of reorganization.[6] The *Sure–Snap* court properly concluded that the

debtor could have and should have raised any such lender liability claims prior to or in the context of confirmation. *Accord In re Micro–Time Management Systems, Inc.*, 983 F.2d 1067 (Table), 1993 WL 7524 (6th Cir.), *cert. denied* — U.S. —, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993) (where claims in post-confirmation action are "integrally related to the subject matter of the bankruptcy proceeding," res judicata applies to preclude the action).

The material facts in *Sure–Snap* are totally different than those here. The CUT group, in contrast to State Street, has made no showing in its motion to dismiss that MAI's complaint is integrally related to MAI's plan of reorganization. *Sure–Snap* does not support the CUT group's position. The other cases the CUT group relies upon are equally distinguishable or unpersuasive. Thus, the rule the CUT group advocates, that the confirmation order bars any claim of the debtor that could have been raised in the bankruptcy proceeding or the confirmation proceedings not expressly reserved in the plan of reorganization, finds no support in the decisional law.

The asserted rule is without merit for other reasons. The *debtor*, not its creditors, is entitled to a discharge from liability on all claims that arose pre-confirmation. 11 U.S.C. § 1141(d)(1). There is nothing mutual in the operation of that Bankruptcy Code section. Thus, only the *creditors* of a debtor have the obligation to determine and file any claims they may have against the debtor. 11 U.S.C. § 501; Fed.R.Bankr.P. 3003(c).

Absent special circumstances, at a confirmation hearing, the debtor's only obligation is to satisfy the standards of 11 U.S.C. § 1129 and the other applicable provisions of Title 11, and to address any objections raised in the context of those provisions. No Code section requires the debtor to raise pre-con-

---

**5.** In connection with the res judicata argument, the CUT group argues inconsistent and unsupported positions. For example, the CUT group argues that the fourth *Sanders* requirement was satisfied because "MAI expressly assumed its contracts with [the CUT group]." Docket no. 9 at 12. No citation to the record is offered for this assertion. Moreover, this assertion is inconsistent with its reply brief, wherein the CUT

group insisted MAI rejected the contracts. Docket no. 15 at 7, 9.

**6.** 948 F.2d at 870 (lender liability claims integrally related to the loan that was the subject of the reorganization); *Id.* at 874 (same); *Id.* at 875 (plan of reorganization and lender liability claims essentially the same matter).

firmation every ripe dispute it has with entities with which it had pre-petition commercial relationships. *See generally* Bruce W. Akerly & Christopher J. Ozburn, *The Impact of Confirmation and Postconfirmation Remedies,* 3 J. Bankr. L. & Prac., 551, 552–55 (Sept./Oct. 1994) (discussing effect of confirmation order on debtor and creditors).[7]

Finally, the CUT group's asserted rule would contravene the central purposes of a Chapter 11 proceeding. A Chapter 11 proceeding gives a debtor a breathing spell from paying its creditors, provides it with an adequate opportunity to restructure its liabilities and business operations in anticipation of the fresh start that it receives under 11 U.S.C. § 1141. *E.g.,* H.R.Rep. No. 595, 95th Cong., 1st Sess., 1, 340–42 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–98. No court with jurisdiction over a Chapter 11 debtor should judicially impose upon that debtor the requirement to raise all claims it possesses before entry of the confirmation order. Such a requirement would restrict the ability of the principals of the debtor to focus upon restructuring the debtor, instead forcing the principals to focus their attentions on determining all causes of actions the debtor possesses against third party non-debtor entities. The result would be an obstruction of the entire reorganization process contemplated by Congress.

### III. *Discussion of the Motion to Transfer Venue.*

The CUT group moves in the alternative for this court to transfer venue of this action to the United States District Court for the Central District of California pursuant to Bankruptcy Rule 7087 and 28 U.S.C. § 1412.

### A. *There is No Forum Selection Clause in Favor of the Defendants.*

■ The CUT group's first ground relies on three of the contracts that underlie MAI's complaint. The CUT group argues these three contracts contain forum selection clauses. Each of those contracts is between MAI,

and either The Computer Group or Nanook. In each contract, TCG or Nanook is defined as "VAR" (an abbreviation for value added reseller). The CUT group relies upon the following language, which is identical in all three of these contracts:

*Governing law:* This Agreement shall be construed and enforced in accordance with the laws of the State of California and VAR agrees that venue for any dispute arising out of this Agreement shall be limited to the state courts of California and to the federal courts for the state of California and hereby irrevocably consents to submit to the jurisdiction of such courts.

As MAI notes, this language does not bind MAI to the venue of California. Only VAR agreed to be limited to that venue. MAI's other arguments need not be considered.

### B. *An Evidentiary Hearing Will Be Conducted on the Section 1412 Issues.*

The CUT group's second ground in support of its venue motion is that the interests of justice and the convenience of the parties mandate transfer of this adversary proceeding pursuant to 28 U.S.C. § 1412. Currently, there is no record upon which this court can properly make a ruling on this argument. *Bill's Dollar Stores v. New Orleans Printing Services, Inc. (In re Bill's Dollar Stores, Inc.),* 1994 WL 443678 (Bankr.D.Del. July 27, 1994). Thus, an evidentiary hearing on the CUT group's motion to transfer pursuant to § 1412 will be scheduled.

### IV. *Conclusion*

An order in accordance with this Memorandum Opinion is attached. The court shall enter separate orders in each of the other adversary proceedings to address the respective motions to dismiss in those proceedings.

### ORDER

AND NOW, February 9, 1995, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

---

**7.** The observations in these two paragraphs dispose of another case the CUT group heavily relies upon, *In re Micro–Time Management Systems, Inc.,* 983 F.2d 1067 (Table), 1993 WL 7524 (6th Cir.), *cert. denied* — U.S. ——, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993). That decision improperly expanded the statutory effect of 11 U.S.C. § 1141 as the basis for its dictum that the confirmation order bars litigation of any claims *of the debtor* that could have been raised in a Chapter 11 proceeding.

1. The motion to dismiss of defendants C.U. Technologies, Inc., The Computer Group, Ltd., Nanook Enterprises, Inc., and Armond Schroeder is DENIED.

2. An evidentiary hearing on the motion to transfer venue pursuant to 28 U.S.C. § 1412 will be heard on March 8, 1995 at 10:30 a.m., standby.