**TRANS WORLD AIRLINES, INC.**

v.

**KARABU CORP., Global Discount Travel Services LLC and State Street Bank and Trust Company of Connecticut, National Association, as Security Trustee.**

**Bankruptcy No. 92–115.**
**Adv. No. 96–40.**

United States Bankruptcy Court,
D. Delaware.

May 31, 1996.

R. Franklin Balotti, Richards, Layton & Finger, Wilmington, DE.

Theodore Altman, Gordon Altman Butowsky Weitzen Shalov & Wein, New York City.

Joseph Grey, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE.

William H. Sudell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

Stephen M. Forte, Smith, Gambrell & Russell, Atlanta, GA.

HELEN S. BALICK, Chief Judge.

This is the court's decision on the motions of the defendants Karabu Corporation and Global Discount Travel Services LLC to dismiss, or to abstain from hearing this adversary proceeding. An evidentiary hearing was conducted, and oral argument heard on May 22, 1996.

*Background of This Chapter 11 Case*

TWA filed a Chapter 11 petition in the District of Delaware on January 31, 1992. On December 30, 1992, this court approved a comprehensive settlement agreement involving TWA, the Official Committee of Unsecured Creditors, the Pension Benefit Guaranty Corporation, several TWA Unions, Carl C. Icahn and certain Icahn-related entities. The settlement agreement consisted of several discrete but interrelated transac-

tions involving intercreditor disputes, labor concessions, forgiveness of debt, provision of financing to TWA, and other capital restructuring. The comprehensive settlement provided a key building block for TWA's plan of reorganization, and indeed contemplated that several components of the settlement would be incorporated into a future plan.

Exhibit B to the settlement agreement is a note agreement between TWA and Karabu. Exhibit A to the note agreement is a security agreement, which is between TWA and a security trustee, State Street Bank and Trust Company of Connecticut, National Association. The security agreement, dated January 5, 1993, secured the repayment of up to $85 million available under the note agreement. The collateral for this agreement included TWA's airframes and engines. Section three of the agreement detailed TWA's obligations concerning the collateral.

The TWA plan was confirmed on August 12, 1993. The plan included a financial restructuring of TWA, including the issuance of several types of debt obligations. Several sections of the plan referenced the comprehensive settlement agreement, and left unaffected the obligations created in the agreement. The plan was substantially consummated on November 3, 1993. This court entered a final decree in this Chapter 11 case on June 21, 1995. On March 20, 1996, this court reopened the case to allow TWA to file this adversary proceeding.

*The Complaint*

Count one and two of TWA's complaint in this adversary proceeding draw upon this background. Count one of the complaint deals with a dispute between Karabu and TWA with respect to the interpretation of certain provisions of the security agreement, as follows. Karabu holds a majority of the principal amount of the notes issued under the note agreement, and has the right to give written notice to the security trustee of any defaults defined in the security agreement. The trustee in turn may then notify TWA of such defaults. Section 3.10 of the security agreement deals with TWA's obligations to maintain the airframes and engines. TWA maintains all its airframes and engines pursuant to a maintenance program approved by the Federal Aviation Administration. Karabu contends that TWA is prohibited by the security agreement from obtaining modification of its maintenance program from the F.A.A., without Karabu's prior consent. Karabu intends to advise the security trustee that section 3.10 has been breached and that therefore a default has occurred. An event of default occurs 30 days after the security trustee gives notice to TWA of the default.

Count one further alleges that upon an event of default, a default could occur related to certain 11% notes, 12% notes, and 12% preferred stock created pursuant to the confirmed plan, that a default could occur under certain aircraft leases, and that the security trustee may accelerate the notes referred to in exhibit B of the settlement agreement, take possession of the collateral, and sell that collateral.

Count two deals with a ticket agreement between TWA, Karabu and Global. Global is a wholly-owned subsidiary of Karabu. TWA commenced an action against Global in St. Louis state court seeking among other things, an injunction against Global for ongoing violations of the ticket agreement. The action was then dismissed without prejudice, as TWA and Global agreed to resolve their differences through negotiation. Count two then alleges that Karabu's claims of default of section 3.10 discussed in count one were made in bad faith to obtain for Global unjustified leverage in its negotiations with TWA concerning the ticket agreement. Thus, while counts one and two arise out of seemingly different sets of facts, according to TWA they are related.

There is a count three, but it adds nothing to the discussion of the two motions currently before the court.

The complaint seeks a declaration that TWA's modifications of its maintenance program for airframes and engines do not breach its maintenance obligations under the security agreement, a permanent injunction enjoining Karabu from advising the security trustee that a default exists by reason of TWA's modification of the maintenance program for airframes and engines, a permanent injunction enjoining the trustee from notify-

ing TWA of such a default, and related injunctive relief.

*Discussion*

The defendants Karabu and Global have moved to dismiss for lack of subject matter jurisdiction, and in the alternative, have moved for this court to abstain under 28 U.S.C. § 1334(c)(1) (permissive abstention).

■ Considering initially the subject matter jurisdiction issue, this court has subject matter jurisdiction over any proceeding that conceivably could affect TWA's ability to consummate the confirmed plan. *MAI Systems v. C.U. Technologies (In re MAI)*, 178 B.R. 50, 52 (Bankr.D.Del.1995).

■ TWA makes two arguments. First TWA argues that this court has already ruled on the subject matter jurisdiction issue, and that the law of the case doctrine applies. TWA points to two orders. The first is this court's confirmation order approving the second amended plan, which included a retention of jurisdiction clause that arguably covers the present dispute. However, the prefatory paragraph to the retention of jurisdiction section explicitly states that retention is limited to the extent "legally permissible." Case no. 92–115, docket no. 2901 at 68. TWA also relies on an order this court entered on December 30, 1992 approving the comprehensive settlement agreement. Case no. 92–115, docket no. 1419. That order also included a retention of jurisdiction clause that arguably covers the present dispute. However, implicit in that order as well is the clause "to the extent legally permissible," since no order can expand the jurisdiction of the court beyond that allowed by law. Thus, these orders merely beg the question of whether this adversary is within this court's subject matter jurisdiction. For this and other reasons, TWA's law of the case doctrine argument is without merit.

■ TWA's second argument in support of subject matter jurisdiction is that the *MAI* standard is satisfied. The plaintiff, here TWA, has the burden to prove this standard has been satisfied. The record includes the evidence introduced at the hearing, as well as the previous pleadings already on file. *Mil-*

*lipore Corp. v. University Patents, Inc.*, 682 F.Supp. 227, 231 (D.Del.1987).

The record includes those facts discussed in the background section of this Opinion, and the following. TWA filed a second Chapter 11 bankruptcy petition on June 30, 1995 in the Eastern District of Missouri. That case was a "prepackaged case" and the pre-negotiated plan impaired only the claims of certain 8% notes, 10% notes, and certain interests of TWA's stockholders. The other classes of claims were not affected. That plan was confirmed on August 4, 1995, and that case was closed on December 28, 1995. Presently, about $800 million of the obligations created under the plan in the District of Delaware Chapter 11 case still remain unpaid.

Karabu has asserted that TWA has breached its maintenance obligations under the security agreement and may notify the security trustee that a default has occurred under the security agreement. Michael Palumbo, Vice–President and Treasurer for TWA, testified to several results that could occur if the security trustee declares a default, including:

1. An acceleration of the 11% and 12% note obligations created under the plan; and

2. A detrimental impact on TWA's ability to pay those debt obligations.

The defendants did not directly challenge this evidence on cross-examination, and in argument did not point to evidence in the record tending to show that the notification of a default would not affect the ability to pay the debt obligations created by the plan. The defendants argue that the second TWA bankruptcy is relevant to the jurisdiction issue, however, the record does not show that the second bankruptcy affected the remaining obligations of TWA under the first plan that are at issue here. Moreover, section 3.10, created in the context of the first bankruptcy, has not been modified since this District of Delaware plan was confirmed. Thus, the record shows that TWA's ability to complete consummation of its plan could be affected by the outcome of this adversary proceeding. The jurisdictional standard of the *MAI* case is satisfied. This court has subject

matter jurisdiction over this adversary proceeding. *Accord, Eubanks v. Esenjay Petroleum Corp.,* 152 B.R. 459, 464 (E.D.La.1993).

■ On Karabu's alternative motion for this court to permissively abstain, TWA initially argues that section 10.8 of the Security Agreement binds the defendants to this forum as the forum where any dispute under the Security Agreement will be adjudicated, or somehow limits the ability of the defendants to request this court to abstain. That section states in relevant part:

> Each party ... submits.... to the nonexclusive jurisdiction of the Bankruptcy Court [for the District of Delaware] or any New York State court or Federal court ... sitting in New York ... in any action or proceeding arising out of ... this Agreement.

This language speaks for itself. TWA's forum selection arguments are without merit.

■ Turning to the permissive abstention issue, the plaintiff and defendants correctly focus on the factors stated in *TTS v. Stackfleth (In re Total Technical Services),* 142 B.R. 96, 100–101 (Bankr.D.Del.1992). Considering these factors as numbered in the *TTS* case, the court finds that factors 3, 6, 9, 10, 11, and 12 are not particularly helpful to either the plaintiff or the defendants.

■ Concerning factor one, TWA filed an application for a final decree on June 21, 1995. Case no. 92–115, docket no. 4559. An application for a final decree is a representation that the Chapter 11 estate is fully administered. 11 U.S.C. § 350. TWA is judicially estopped from now arguing that the TWA estate is not fully administered. *E.g., In re Scarano v. Central R. Co. of N.J.,* 203 F.2d 510, 512–13 (3d Cir.1953). Thus, abstention would have no effect on the efficient administration of the estate. Factor one favors the defendants.

Concerning factor two, TWA does not dispute that the interpretation of the security agreement is a matter of New York law. The court disagrees with TWA that this court "is in a uniquely advantageous position to interpret the meaning of section 3.10(c)." Answering Brief at 19. Factor two favors the defendants.

Concerning factor four, there exists a related proceeding pending elsewhere: *TWA v.*

*Icahn, Karabu, Global Discount Travel Services, L.L.C., et al.,* filed by TWA in the Circuit Court of the City of St. Louis, Missouri (this is a different action than the one referred to in count two of the complaint). The court has read the allegations of the complaint in the St. Louis proceeding, and cannot agree on the present record with TWA's conclusion that the issues raised in the adversary proceeding here are not related to that proceeding. The defendants also point to the existence of a second related proceeding, *Global Discount Travel Services, LLC, Global Travel Marketing Services, Inc. and Karabu Marketing Corp. v. TWA,* in the Southern District of New York. In light of this court's comments concerning the St. Louis proceeding, however, there is no need to discuss the significance of the New York proceeding. Factor four strongly favors the defendants here.

Concerning factor five, TWA concedes there is no jurisdictional basis other than 28 U.S.C. § 1334.

Concerning factor seven, the parties needlessly argue about whether this is a core proceeding. The *TTS* case only requires the court to consider the substance of an asserted core proceeding. TWA asserts this proceeding is core. The substance of this proceeding is a contract dispute governed by New York law. Factor seven strongly favors the defendants.

Factor eight favors the defendants, as there are no core matters related to this adversary that need to be severed, and indeed, the parties would not have to return to this court to enforce any non-bankruptcy court judgment.

In summary, while analysis of permissive abstention is not merely a mathematical exercise of discerning how many factors favor the moving party, here, *all* the significant factors favor abstention. The defendants have met their burden. The court shall exercise its discretion to abstain from hearing this adversary proceeding.

IT IS SO ORDERED.