FEDERATED MANAGEMENT COMPANY et al., Appellants,

v.

LATHAM & WATKINS et al., Appellees.

[Cite as *Federated Mgt. Co. v. Latham & Watkins* (2000), 138 Ohio App.3d 815.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–1322.

Decided Aug. 22, 2000.

*Beus Gilbert, P.L.L.C., Leo R. Beus, Nicholas J. DiCarlo,* and *Timothy G. Kasparek*; *McFadden, Winner & Savage* and *Mary Jane McFadden,* for appellants.

*Porter, Wright, Morris & Arthur, L.L.P.,* and *Mark K. Merkle*; *Schulte, Roth & Zabel, L.L.P.,* and *Alan R. Glickman*; *Marc E. Elovitz* and *Stephen P. Davidson,* for appellee Latham & Watkins.

*Zeiger & Carpenter, John W. Zeiger, Steven W. Tigges* and *Ronald E. Laymon,* for appellee Kegler, Brown, Hill & Ritter, L.P.A.

BROWN, Judge.

Plaintiffs-appellants, Federated Management Co., Federated Research Corp., Federated Advisors, Federated Investment Counseling (collectively referred to as "Federated"), Oaktree Capital Management, L.L.C. ("Oaktree"), TCW Funds Management, Inc., TCW Asset Management Company, Trust Company of the West (collectively referred to as "TCW"), W.R. Huff Asset Management Co., L.L.C. ("Huff"), and numerous other trustees, appeal a judgment of the Franklin County Court of Common Pleas granting a motion for summary judgment in favor of Latham & Watkins ("Latham") and Kegler, Brown, Hill & Ritter, L.P.A. ("Kegler"), defendants-appellees.

On May 17, 1994, Mid–American Waste Systems, Inc. ("MAW"), an integrated solid-waste management company and a publicly traded company, issued 12.25 percent senior subordinated notes ("notes") in the aggregate principal amount of $175 million ("note offering") pursuant to a prospectus of the same date. Federated, Oaktree, TCW, and Huff are investment advisers, investment managers, and/or attorneys-in-fact who filed suit on behalf of certain trustees and/or beneficial owners of the notes.

Approximately two years later, on January 21, 1997, MAW filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. The parties in the present case, among others, were creditors in the bankruptcy proceedings. Appellants sought recovery for the loss in the value of their notes. Appellees sought recovery for legal fees arising out of their various services for MAW.

On January 24, 1997, appellants filed an action in the Franklin County Court of Common Pleas ("*Federated I*"), claiming that the note offering contributed to MAW's bankruptcy. Appellants' complaint named MAW's former management, MAW's accountants, the note offering underwriters, and various other MAW financial advisors as defendants.

In the Delaware bankruptcy proceedings, appellants did not assert any claims against appellees in the bankruptcy court or in *Federated I*. On September 17, 1997, the bankruptcy court entered an order confirming a joint liquidating plan of reorganization for MAW. The reorganization plan allowed appellants an unsecured claim in the aggregate amount of $210,378,952. On January 20, 1999, the court-appointed plan administrator for MAW filed an action against appellees, as well as other defendants, in New York, asserting the same claims as in the present case.

On February 10, 1999, appellants filed the present action against appellees in the Franklin County Court of Common Pleas. In their complaint, appellants made the following averments (1) Latham provided legal services to MAW from June 1990 until MAW filed for bankruptcy on January 21, 1997, (2) Latham also

acted as counsel to MAW for various other matters, (3) Kegler provided legal services to MAW from the time of its organization in 1986 until MAW filed for bankruptcy, and (4) Kegler acted as MAW's outside general counsel during this period and as MAW's counsel for all of its public offerings and securities work. Appellants also averred that appellees affirmatively misled and fraudulently concealed MAW's true financial condition from its independent outside directors, shareholders, creditors, the Securities and Exchange Commission, and appellants. Appellants claimed that appellees directly or indirectly misled several groups, including appellants, regarding MAW's financial situation and the value of its assets by material misrepresentations and omissions in the preparation and dissemination of false and fraudulent public filings. Appellants alleged that the public filings, including prospectuses, registration statements, Form 10–Ks, Form 10–Qs, and Form 8–Ks, materially affected and artificially inflated the financial condition of MAW and induced the appellants to purchase the notes, which were worth significantly less than represented. Appellants specifically asserted claims for common-law fraud, negligent misrepresentation, and aiding and abetting common-law fraud.

On April 15, 1999, Kegler filed a motion for summary judgment in the present case, arguing that appellants' claims are barred pursuant to *res judicata* because they did not assert them against appellees in MAW's reorganization plan in the bankruptcy proceedings. On April 30, 1999, Latham filed a motion to dismiss, asserting the same *res judicata* argument. On April 16, 1999, Latham also filed a motion to dismiss in the New York action based, in part, upon *res judicata*.

On May 14, 1999, appellants filed a motion in the Delaware bankruptcy court requesting a ruling on the issue of whether their claims against appellees in the trial court were barred by *res judicata*. Appellants also filed a motion in the bankruptcy court attempting to prevent the New York court from deciding the issue of *res judicata*. On September 7, 1999, the bankruptcy court overruled both of appellants' motions, finding that the bankruptcy court did not have exclusive jurisdiction over the *res judicata* issues raised by appellees.

On October 7, 1999, the Franklin County Court of Common Pleas granted appellees' motion for summary judgment based upon *res judicata*, treating Latham's motion to dismiss as a motion for summary judgment. In finding that appellants' current action was barred by *res judicata*, the trial court found that (1) there was a final decision rendered on the merits in the MAW bankruptcy action, (2) both parties in the present action were also parties in the MAW bankruptcy action as creditors, (3) appellants' claims against appellees should have been raised in the MAW bankruptcy proceedings because the claims would have affected the bankruptcy estate, and (4) the claims involved in both actions arose out of the same transactions because appellants alleged in the present case

that appellees' actions contributed to MAW's bankruptcy. Therefore, the trial court found that the final confirmation order issued by the bankruptcy court in the MAW case operated as a final judgment, and the doctrine of res judicata barred relitigation of appellants' claims against appellees in the current case.

On January 6, 2000, the New York court also granted appellees' motion to dismiss based upon *res judicata.* The New York Supreme Court found that there was a final judgment in the bankruptcy proceedings involving the same parties and that the claims in the New York case should have been brought forth in the bankruptcy proceedings because they were "integrally related" to the bankruptcy. The New York court further stated that its "determination is in accord with the ruling in Ohio to the same effect * * *."

Appellants now appeal the judgment of the trial court, asserting the following assignment of error:

"The trial court erred in its decision and entry of October 7, 1999, by granting defendant Kegler, Brown, Hill & Ritter & Co. L.P.A.'s motion for summary judgment and defendant Latham & Watkins' motion to dismiss and dismissing plaintiffs' complaint based on the doctrine of res judicata." (Footnote omitted.)

■ Appellants assert in their sole assignment of error that the trial court erred in granting Kegler's motion for summary judgment and Latham's motion to dismiss. The trial court construed Latham's motion to dismiss as a motion for summary judgment and ruled on it accordingly. Therefore, our analysis is under only the summary judgment analysis. Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 203–204. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383, 384.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio explained the respective burdens of parties when a motion for summary judgment is filed. The Supreme Court stated that the moving party, on the ground the nonmoving party cannot prove its case, has the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. The moving party cannot discharge its initial burden under the rule with a conclusory assertion that

the nonmoving party has no evidence to prove its case. *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 147, 677 N.E.2d 308, 318–319; *Dresher, supra,* at 293, 662 N.E.2d at 264, 273–274. Rather, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); see, also, *Dresher, supra,* at 296, 662 N.E.2d at 275–276. Once the moving party satisfies its initial burden by affirmatively demonstrating that the nonmoving party lacked the evidence to support its claims, the nonmoving party is required to set forth specific facts showing that there is indeed a genuine issue. *Id.* at 293, 662 N.E.2d at 273–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc., Inc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

[2–4] The trial court found that appellants' claims against appellees were barred by the doctrine of *res judicata.* The doctrine of *res judicata* states that an existing final judgment or decree between the parties to litigation is conclusive as to all claims that were or might have been litigated in the first lawsuit. *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 25 OBR 89, 494 N.E.2d 1387. A judgment in bankruptcy court bars a subsequent suit if (1) the prior judgment was a final judgment rendered by a court of competent jurisdiction, (2) both cases involve the same parties, (3) the subsequent action raises an issue that was actually litigated or that should have been litigated, and (4) the same cause of action is at issue in both cases. *Latham v. Wells Fargo Bank, N.A.* (C.A.5, 1990), 896 F.2d 979, 983; see, also, *Ohio Dept. of Human Serv. v. Kozar* (1995), 99 Ohio App.3d 713, 716, 651 N.E.2d 1039, 1040–1041, citing *Quality Ready Mix, Inc. v. Mamone* (1988), 35 Ohio St.3d 224, 520 N.E.2d 193. The application of the doctrine of *res judicata* is not limited to points of law actually and directly at issue in the prior action. See *Joe Horisk's Salvage Pool Sys. of Ohio v. Strongsville* (1993), 91 Ohio App.3d 121, 128, 631 N.E.2d 1097, 1101–1102, citing *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 558 N.E.2d 1178.

*Res judicata* applies between federal court and state court judgments. *Rogers, supra.* A judgment rendered by a federal court of competent jurisdiction is given *res judicata* effect in the courts of Ohio. *Rogers, supra.* The doctrine of *res judicata* also applies to proceedings in bankruptcy court. *Jungkunz v. Fifth Third Bank* (1994), 99 Ohio App.3d 148, 151, 650 N.E.2d 134, 135–136. A bankruptcy plan confirmed by a bankruptcy court has the effect of a judgment rendered by a state or district court. *Id.* Thus, "[a]ny attempt by the parties [to the bankruptcy] to relitigate any of the matters that were raised or could have

been raised (in the bankruptcy proceeding) therein is barred under the doctrine of res judicata." *In re Brady, Texas, Mun. Gas Corp.* (C.A.5, 1991), 936 F.2d 212, 215.

As one federal court has explained, "[r]estraining litigious plaintiffs from taking more than 'one bite of the apple' has been our avowed purpose since the common law doctrine of res judicata first evolved." *Sure–Snap Corp. v. State Street Bank & Trust Co.* (C.A.2, 1991), 948 F.2d 869, 870. Further, "[b]ecause of spiraling litigation costs, increasingly congested courts—especially bankruptcy courts—and expanding theories of recovery, such as lender liability, it is more imperative than ever that the doctrine of res judicata be applied with unceasing vigilance." *In re Baudoin* (C.A.5, 1993), 981 F.2d 736, 740.

■ The first element required by *res judicata* to bar a subsequent suit following a judgment in bankruptcy court is that the judgment was a final judgment rendered by a court of competent jurisdiction. In the bankruptcy context, an order confirming a plan of reorganization constitutes a judgment and a final adjudication on the merits of a bankruptcy proceeding. *In re Baudoin, supra,* at 742; *Stoll v. Gottlieb* (1938), 305 U.S. 165, 169–171, 59 S.Ct. 134, 136–137, 83 L.Ed. 104, 107–108; *In re Chattanooga Wholesale Antiques, Inc.* (C.A.6, 1991), 930 F.2d 458, 463. The bankruptcy court issued an order confirming a bankruptcy plan in the MAW bankruptcy in 1997, constituting a final judgment on the merits by a court of competent jurisdiction. Therefore, in the present case, the first element for *res judicata* has been satisfied.

■ The second requirement for *res judicata* is that the bankruptcy action and the present action involve the same parties. In the present case, the trial court found that both parties in the present action were also parties in the bankruptcy action. We agree. Numerous courts have held that in the context of bankruptcy matters, not only formally named parties, but all participants in the bankruptcy proceedings, are barred by *res judicata* from asserting matters they could have raised in the bankruptcy proceedings. See *Micro–Time Mgt. Sys., Inc. v. Allard & Fish, P.C.* (C.A.6, 1993), 983 F.2d 1067, 1993 WL 7524, citing *In re Met–L–Wood Corp.* (C.A.7, 1988), 861 F.2d 1012, 1016; see, also, *In re Brown* (6th Cir. BAP, 1998), 219 B.R. 191 (citing *Micro–Time*).

Appellants and appellees would be considered participants in the bankruptcy proceedings. Courts have specifically held that creditors in a bankruptcy proceeding are considered "parties" for purposes of *res judicata. Sanders Confectionery Products, Inc. v. Heller Financial, Inc.* (C.A.6, 1992), 973 F.2d 474, 481. Thus, appellants, as creditors of MAW, were parties to the bankruptcy proceeding. See *id.* Likewise, appellees, as both creditors and attorneys for MAW, were parties to the proceeding. See *id.; Met–L–Wood, supra,* at 1018 (trustees'

claim against debtor's attorneys was barred by the bankruptcy court's confirmation order). Therefore, the second requirement for invoking *res judicata* has been satisfied.

The third requirement for invoking *res judicata* is that the present action raises an issue that was actually litigated or that should have been litigated in the bankruptcy action. Appellants argue that they could not have litigated the present claims in the bankruptcy action because the claims do not implicate the priority of distribution of MAW's assets. Appellants also assert that the present claims "do not involve property of the estate, fairness within the bankruptcy process, claim position, or the administration of the estate. [Appellants'] fraud claims are simply not related in any way to MAW's bankruptcy case; rather, they are independent claims * * *." Appellees counter that the present claims could have been raised in the bankruptcy proceedings because they had a conceivable effect on MAW's estate.

A bankruptcy court's jurisdiction extends over four types of matters (1) Title 11 cases, (2) proceedings that arise under Title 11, (3) proceedings that arise in a case under Title 11, and (4) proceedings related to a case under Title 11. See Sections 1334(a) and (b), Title 28, U.S.Code. In the present case, it is necessary only to determine whether the matter is at least "related to" the bankruptcy proceeding.

 A bankruptcy court's "related to" jurisdiction is very broad, "including nearly every matter directly or indirectly related to the bankruptcy." *In re Mann v. Alexander Dawson, Inc.* (C.A.9, 1990), 907 F.2d 923, 926, fn. 4. Thus, a proceeding is related to a case under Title 11 if it "could conceivably have any effect on the estate being administered in bankruptcy" such that " 'it is possible that [the] proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate.' " *Halper v. Halper* (C.A.3, 1999), 164 F.3d 830, 837, quoting *In re Guild & Gallery Plus, Inc.* (C.A.3, 1996), 72 F.3d 1171, 1181 (other citations and quotations omitted); see, also, *United States Trustee v. Gryphon at the Stone Mansion, Inc.* (C.A.3, 1999), 166 F.3d 552, 556. "A key word in [this test] is conceivable. Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate." *In re Guild* at 1181. Further, the matter need not directly involve the debtor, as long as it "could alter the debtor's rights [or] liabilities," although an "extremely tenuous connection" will not suffice. *In re Wolverine Radio Co.* (C.A.6, 1991), 930 F.2d 1132, 1142.

Although only one ground was necessary to satisfy the third requirement for *res judicata*, the trial court found that the present proceedings were "related to" the bankruptcy action for the following three reasons (1) if appellants prevailed in the present action, the administration of the MAW bankruptcy estate would have to be modified in order to prevent an unlawful double recovery, (2) if appellants had raised their claims against appellees in the bankruptcy proceedings, appellees could have sought contribution from MAW, thereby affecting the bankruptcy distribution, and (3) if appellants had raised their claims against appellees in the bankruptcy proceedings, appellees and other creditors could have objected to the bankruptcy reorganization plan. We find the second reason relating to contribution to be the most compelling in demonstrating that the present action was "related to" the bankruptcy proceeding and, therefore, that it should have been litigated during the prior action in bankruptcy.

With regard to the issue of contribution, appellants claimed that appellees directly or indirectly misled them regarding MAW's financial situation and the value of its assets by material misrepresentations and omissions in the preparation and dissemination of false and fraudulent public filings. Appellees countered that all of the financial information they used in producing the investment-related filings and documents detailing MAW's financial condition was provided by MAW and, thus, the present claims should have been brought against them in the bankruptcy proceedings so that they could have sought contribution from MAW for any liability they incurred as a result of appellants' claims. Therefore, appellees assert that this would have conferred sufficient "related to" jurisdiction upon the bankruptcy court because a potential claim for contribution could have arisen against MAW as a result of appellants' action.

In contending that contribution from the debtor does not provide a sufficient "related to" nexus in order to bring an action under the jurisdiction of the bankruptcy court, appellant relies largely on *Pacor v. Higgins* (C.A.3, 1984), 743 F.2d 984, overruled on other grounds by *Things Remembered, Inc. v. Petrarca* (1995), 516 U.S. 124, 134–135, 116 S.Ct. 494, 500, 133 L.Ed.2d 461, 470–471. In *Pacor*, the plaintiff brought a state court action for work-related exposure to asbestos against the product's supplier, Pacor. Pacor filed a third-party complaint impleading the original asbestos manufacturer, Johns–Manville Corporation. After Johns–Manville entered Chapter 11 bankruptcy proceedings, Pacor sought to remove the entire controversy to bankruptcy court. The Third Circuit held that the action between Pacor and Johns–Manville was removable but that the original action against Pacor was not related to a case in bankruptcy and therefore could not be removed. The Third Circuit stated that the original action against Pacor was, "[a]t best, * * * a mere precursor to the potential third party claim for indemnification by Pacor against Manville." *Pacor* at 995. The court

further held that because all issues with regard to Manville's possible liability would be resolved in a later action, "there would be no automatic creation of liability against Manville on account of a judgment against Pacor" and "[t]here would * * * be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim." *Id.* at 995. Thus, the court in *Pacor* found that there could be no "related to" jurisdiction without "automatic" liability for indemnification or contribution against the debtor.

However, other federal courts have construed the bankruptcy court's "related to" jurisdiction more liberally than *Pacor*. These courts have found that a claim between two non-debtors that will "potentially" or "possibly" affect the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer "related to" jurisdiction. See *Kocher v. Dow Chem. Co.* (C.A.8, 1997), 132 F.3d 1225 (potential indemnification claims against debtor by non-debtor defendants in separate action could conceivably affect debtor's bankruptcy estate and thus are "related to" the bankruptcy case); see, also, *Owens Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp)* (C.A.4, 1997), 124 F.3d 619, 626 ("Notably, the *Pacor* test does not require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action, nor does it require certain or likely impact upon the handling and administration of the bankruptcy estate. The possibility of such alteration or impact is sufficient to confer jurisdiction"); *Kaonohi Ohana, Ltd. v. Sutherland* (C.A.9, 1989), 873 F.2d 1302, 1306–1307; *Natl. Union Fire Ins. Co. v. Titan Energy, Inc.* (C.A.8, 1988), 837 F.2d 325, 329; *In re Michigan Real Estate Ins.Trust* (E.D.Mich.1988), 87 B.R. 447.

The obvious difference between the "automatic" liability requirement enunciated in *Pacor* and the rulings in the above-cited cases is the degree of certainty required to demonstrate that the action will have an effect on the bankruptcy proceeding—via recovery against the debtor for indemnity or contribution as a result of the underlying proceeding, or otherwise. For the reasons set forth below, we believe that given the broad jurisdiction of the bankruptcy court as outlined above in *In re Mann, Halper,* and *In re Guild,* the interpretation more congruous with this granting of extensive jurisdiction comes from those cases that do not require a demonstration of "automatic" liability through indemnification and contribution.

Although the indemnity and contribution claims by appellees against MAW's bankruptcy estate cannot be said to have been successful to a "certainty" or "automatically" at the bankruptcy proceedings, in testing "related to" jurisdiction, as explained above, an effect is not required to a "certainty." Rather, jurisdiction will attach on a finding of any "conceivable effect." See *Wood v. Wood (In re Wood)* (C.A.5, 1987), 825 F.2d 90, 94 ("Although we acknowledge the possibility that this suit may ultimately have no effect on the bankruptcy, we cannot

conclude, on the facts before us, that it will have no conceivable effect." [Emphasis *sic.*]); *In re Titan Energy, supra*, at 330 ("[E]ven a proceeding which portends a mere contingent to tangential effect on a debtor's estate meets the broad jurisdictional test [for 'related to' jurisdiction]"); Vol. 1 *Collier on Bankruptcy* § 3.01[4][c], at 3–26 (15 Ed. Rev.2000) (" '[A]utomatic' liability of the estate is not the sine qua non for related to jurisdiction; all that is necessary is that there could 'conceivably' be some effect upon the estate as a consequence of the litigation in question"). The "automatic" liability analysis set forth in *Pacor* does not comport with this well-established rule of law that certainty is not required in order to meet the "related to" jurisdiction and that merely any "conceivable effect" is sufficient.

Further, several courts have specifically disagreed with and declined to follow *Pacor* and its "automatic" liability requirement. See *In re Salem Mtge. Co.* (C.A.6, 1986), 783 F.2d 626, 635 ("the statute does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding. * * * Congress intended a grant of broad jurisdiction under the bankruptcy laws"); *In re Chateaugay Corp.* (S.D.N.Y.1997), 213 B.R. 633, 640 ("Clearly, the 'automatic liability' language in *Pacor* is inconsistent with this Circuit's 'any conceivable effects' test. * * * Rather, in order to meet the 'any conceivable effects' test, an indemnity claim against the debtor must have a reasonable legal basis"); *In re Dow Corning Corp.* (C.A.6, 1996), 86 F.3d 482, 491 ("It has become clear following *Pacor* that 'automatic' liability is not necessarily a prerequisite for a finding of 'related to' jurisdiction").

In addition, the Third Circuit itself, the same circuit that decided *Pacor*, later retreated from this "automatic liability" requirement in *In re Marcus Hook Dev. Park, Inc.* (C.A.3, 1991), 943 F.2d 261, 264–265. The Third Circuit's departure from this requirement has also been recognized by at least two other courts. See *In re Found. for New Era Philanthropy* (Bankr.E.D.Pa.1996), 201 B.R. 382, 392, fn. 10 ("decisions in the Third Circuit since *Pacor*, particularly *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d at 264–265, suggest that 'automatic' liability is not a prerequisite for a finding of 'related to' jurisdiction"); *In re Dow Corning Corp., supra*, at 491.

Because *Pacor* goes beyond the any "conceivable effects" test, we decline to follow its "automatic" liability requirement. We also find that appellees had a potential contribution claim against MAW. All of the financial information appellees used in producing the investment-related filings and documents detailing MAW's financial condition was provided by MAW, and, thus, they could have conceivably sought contribution from MAW for any liability they incurred as a result of appellants' claims. See, also, R.C. 2307.32 (allowing joint and several liability and the right of contribution among tortfeasors in tort actions). There-

fore, for the preceding reasons, we find that because appellees' claims for contribution could have had a conceivable effect upon MAW's bankruptcy estate, the present action should have been litigated in the bankruptcy proceedings. The third requirement for *res judicata* has been met.

The fourth requirement for invoking *res judicata* is if the same cause of action can be at issue in both cases. In making this determination, we must consider whether the claims arose out of the same transaction or series of transactions, or whether the claims arose out of the same core of operative facts. See *In re Justice Oaks II, Ltd.* (C.A.11, 1990), 898 F.2d 1544, 1551–1552. Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co., Inc. v. Kulick* (C.A.6, 1981), 656 F.2d 1224, 1227.

In this case, the central issue in the bankruptcy proceedings was the determination and distribution of the MAW estate. The essence of appellants' complaint is that they were induced into investing in MAW as a direct result of appellees' directly or indirectly misleading them regarding MAW's financial situation and that appellees' actions contributed to MAW's bankruptcy filing. For the following reasons, we find that the alleged claims against appellees are integrally related to the subject matter of the bankruptcy proceeding and arise out of the same transaction or series of transactions and the same core of operative facts as the bankruptcy proceedings.

To determine whether the causes of action are the same, we examine whether the same transaction, evidence, and factual issues are involved in both cases. *Sure–Snap, supra,* at 874. In *Sure–Snap,* in determining whether there was identity of causes of action, the court stated:

"[Plaintiff's] very allegation that [defendant's] tortious conduct negatively influenced their business's health, makes it hard-pressed to explain how the two causes of action—the plan of reorganization and the [tort] claims—did not comprise the same essential matter." *Id.* at 875.

Several other courts have also found that allegations in a separate complaint claiming that a defendant's tortious conduct negatively impacted the business health of the debtor and contributed to the filing of bankruptcy comprise the same essential matters as those litigated in the bankruptcy proceeding. See *In re Baudoin, supra; Eubanks v. F.D.I.C.* (C.A.5, 1992), 977 F.2d 166 (finding that there is an identity of claims between the confirmation proceeding and lawsuit because the petition alleged that the defendant's actions forced the debtor into bankruptcy); *Oneida Motor Freight, Inc. v. United Jersey Bank* (C.A.3, 1988), 848 F.2d 414, 419, fn. 5 (finding that because the complaint alleged that the defendant's breach was the catalyst to the debtor's Chapter 11 filing, the claims

raised in the lawsuit and bankruptcy proceeding are factually and legally similar so as to apply *res judicata*)."

Although in the present case appellants were not the debtors in the bankruptcy action, there is no reason why the general principle enunciated in the above-cited cases should not apply with equal force to the current case with regard to identity of the issues. The issue for the purposes of this fourth requirement for *res judicata* is whether the transaction, evidence, and core operative facts in both proceedings are the same; the relationship or specific identity of the parties is not at issue.

As in the above cases, appellants' complaint repeatedly claims that appellees' fraudulent conduct in preparing financial prospectuses to secure funding negatively impacted the business health of the debtor and contributed to the filing of bankruptcy:

"20. * * * As a result, MAW had to borrow additional money to make such improvements, committing it to a pattern of ever increasing capital needs, all fueled by a borrowing binge which the Company could not repay.

"* * *

"65. * * * These materially false and misleading statements [by Latham] promoted the illusion that MAW was growing and was profitable, while, in fact, the Note Offering caused MAW to sink deeper into insolvency.

"* * *

"68. Latham knew, misrepresented and failed to disclose or should have known and failed to discover intentionally, willfully, recklessly or negligently that the acts, practices, misleading statements and omissions particularized herein would materially affect * * * the financial condition of MAW.

"* * *

"84. * * * These materially false and misleading statements [by Kegler] promoted the illusion that MAW was growing and was profitable, while, in fact, the Note Offering caused MAW to sink deeper into insolvency.

"* * *

"87. [Kegler] knew, misrepresented and failed to disclose or should have known and failed to discover, intentionally, willfully, recklessly or negligently that the acts, practices, misleading statements and omissions particularized herein would materially affect * * * the financial condition of MAW.

"* * *

"204. As a result, of the Insiders' and Advisers' conduct, aided and substantially assisted by the conduct of Latham and [Kegler], helped increase MAW's

debt burden and artificially prolonged the life of the Company while giving the illusion * * * that MAW's financial situation was stable."

Thus, it is apparent from appellants' complaint that they were not only alleging that appellees committed fraud but that such fraud negatively influenced MAW's health and materially contributed to MAW's filing bankruptcy. Therefore, given appellants' allegations in their complaint and the underlying causes of the filing of the bankruptcy, it is difficult to see how these two actions could be said not to have involved the same transaction, evidence, and factual issues. We would also note that, although in no way is it binding upon this court, the New York Supreme Court also came to this same determination on this issue in the following related action, stating:

"Plaintiff argues that these are not the same claims and that is why they were not brought in the bankruptcy proceeding. This allegation is belied by the fact that similar claims against the underwriters and accountants were specifically reserved. These claims are integrally related to the bankruptcy proceeding for had they been listed the court could have made certain arrangements with respect to payment of the claims submitted by Fleet, Latham and Kegler. *The causes of action alleged herein assert that these parties contributed along with the accountants and underwriters to increase the size of MAW's bankruptcy by their conduct. Such an allegation is integrally related to the bankruptcy and should have been included, when the creditors such as Fleet, Latham and Kegler voted on the proposed plan* * * *." (Emphasis added.) *Truesdell v. Donaldson, Lufkin & Jenrette* (Jan. 6, 2000), Supreme Court of New York, County of New York, Index No. 600314/99, unreported, at 11.

For similar reasons as those cited by the New York Supreme Court, we come to the same conclusion. Therefore, we find that the alleged claims against appellees are integrally related to the subject matter of the bankruptcy proceeding and arise out of the same transaction or series of transactions and the same core of operative facts as the bankruptcy proceedings.

We also note that appellants cite several cases for different general propositions. Appellants cite *In re MAI Systems Corp.* (Bankr.D.Del.1995), 178 B.R. 50, for the proposition that no code section requires the creditor to raise every ripe dispute it has with other creditors prior to plan confirmation. However, neither the trial court nor this court has held that *every* claim must be raised preconfirmation. The determinations only find that creditors must assert claims against other creditors that are barred by *res judicata, i.e.,* those claims that are raised after there has been a final judgment or decree between the parties that is conclusive as to all claims that were or might have been litigated in the first lawsuit. Further, *MAI* is inapplicable to the present case because its finding was based upon the defendant's failure to show in its motion to dismiss "that MAI's

complaint is integrally related to MAI's plan of reorganization." *Id.* at 55. To the contrary, this court and the court below have found that appellants' complaint and the MAW bankruptcy were integrally related. The court in *MAI* specifically acknowledged that "where claims in a post-confirmation action are 'integrally related to the subject matter of the bankruptcy proceeding,' res judicata applies to preclude the action." *Id.* Therefore, we are not persuaded by *MAI.*

Appellants also try to distinguish *CoreStates Bank, N.A. v. Huls America, Inc.* (C.A.3, 1999), 176 F.3d 187, which was cited by the trial court to support its decision. Appellants point to the statement in *CoreStates* that "in general, a creditor who does not raise a claim against another party to the bankruptcy proceeding cannot be precluded from later asserting a claim." *Id.* at 199–200. However, the court in *CoreStates* went on to note that "even if a creditor did not proffer an objection to a plan confirmation, it would still be precluded from bringing a later claim based on the same cause of action if a judgment in its favor on the later claim would effectively nullify the effects of the confirmation order." *Id.* at 200, fn. 13, citing *Sure–Snap, supra,* at 874–876. Likewise, as we have previously found, appellants' claims could have had a conceivable effect on the confirmation order. In this respect, the present claims would be in contravention of the bankruptcy confirmation plan and nullified the effect of the plan to some degree. Therefore, as the trial court found, we find that *CoreStates* does not support appellants' argument in this respect. All the elements of *res judicata* having been met, we hold that the judgment in MAW's bankruptcy bars the suit filed by appellants in the trial court against appellees.

In addition, the trial court held that given the application of *res judicata,* the only way that appellants may have avoided its effect was by an express reservation of their claims against appellees in the confirmation order, citing *Micro–Time, supra.* However, appellants' only argument with regard to this finding by the trial court is that *Micro–Time* was inapplicable because it dealt with the debtor's obligations and that as creditors, appellants had no right to reserve any claim against another creditor in MAW's bankruptcy proceedings. Because appellants' argument refutes only the application of this theory of recovery but does not set forth any other manner by which they may avoid the application of *res judicata* in the present case, we will not address this issue.

Accordingly, we find that the trial court did not err in granting appellees' motion for summary judgment. Appellants' assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

Tyack and Petree, JJ., concur.