[Cite as *Badovick v. Greenspan*, 2011-Ohio-3262.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96097**

## GEORGE L. BADOVICK

PLAINTIFF-APPELLANT

vs.

## ALEXANDER GREENSPAN, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-700410

**BEFORE:** Sweeney, P.J., Rocco, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 30, 2011

**ATTORNEY FOR APPELLANT**

George L. Badovick, Pro Se
11850 Mayfield Road, Suite 2
Chardon, Ohio 44024

**ATTORNEY FOR APPELLEES**

Mary Ann Rabin, Esq.
Rabin & Rabin Co., L.P.A.
55 Public Square, Suite 1510
Cleveland, Ohio 44113

JAMES J. SWEENEY, P.J.:

{¶ 1}  Plaintiff-appellant George L. Badovick ("plaintiff"), who is an attorney, appeals the court's granting defendants-appellees Igor Lantsberg and FGAG, LLC's motion to dismiss plaintiff's "complaint for money."  After reviewing the facts of the case and pertinent law, we affirm.

{¶ 2}  On August 30, 2006, plaintiff was awarded a $5,686.84 judgment against Alexander Greenspan.  On February 8, 2007, Greenspan and his wife ("the Greenspans") filed for bankruptcy, and listed plaintiff as an unsecured creditor.  During the bankruptcy proceedings, it was determined that the Greenspans fraudulently transferred $120,000 to Lantsberg in July of 2006.  Lantsberg used this money as a downpayment on a house, which the Greenspans moved into.  The title to the property was transferred to FGAG, a limited liability company owned by Lantsberg and the Greenspans.

**{¶ 3}** On August 30, 2007, the Greenspans' bankruptcy trustee sent notice to the creditors, including plaintiff, proposing that the fraudulent conveyance claim be settled for $80,000, to be paid by the Greenspans. The notice included instructions to creditors who wanted to oppose the compromise. Plaintiff did not file a response in opposition.

**{¶ 4}** On September 28, 2007, the bankruptcy court issued an order authorizing the bankruptcy trustee to accept $80,000 from the Greenspans "in full settlement of any and all claims of any nature which the trustee has or may have against Igor & Ludmilla Lantsberg arising out of the transactions more fully described in the trustee's motion * * *." The order also released Lantsberg "with respect to such claims."

**{¶ 5}** On October 15, 2007, the Greenspans were granted a bankruptcy discharge. Plaintiff was paid $843.43 and notified that the "discharge prohibits any attempt to collect from the debtor a debt that has been discharged."

**{¶ 6}** On May 9, 2009, plaintiff filed a complaint in the Cuyahoga County Court of Common Pleas against the Greenspans, Lantsberg, and FGAG alleging fraudulent conveyance, civil conspiracy, and "civil RICO claim," all arising from the fraudulent transfer transaction.

**{¶ 7}** On June 19, 2009, plaintiff dismissed his complaint. On August 3, 2009, plaintiff filed a second complaint alleging the same causes of action against the same parties, adding that the Greenspans were being named as "necessary parties," although "[n]o money

judgment is being sought against them." The complaint requested $6,000, treble damages, attorney fees, and costs.

{¶ 8} The case was removed to bankruptcy court. On February 22, 2010, the bankruptcy court found that plaintiff's lawsuit "was a thinly veiled effort" to collect a debt discharged in bankruptcy and ruled that plaintiff violated the Greenspans' discharge injunction. The bankruptcy court relied on plaintiff's admission that the subject matter of his lawsuit — the $120,000 fraudulent transfer from the Greenspans to Lantsberg — is the same subject matter of the $80,000 compromise in the bankruptcy proceedings. As a result of plaintiff's violation, the Greenspans were awarded approximately $13,000 in attorney fees.

{¶ 9} On April 16, 2010, the bankruptcy court remanded this case to the common pleas court, after determining that it lacked jurisdiction over the claims remaining against Lantsberg and FGAG.

{¶ 10} On June 7, 2010, plaintiff dismissed all claims against the Greenspans. Subsequently, Lantsberg and FGAG filed a motion to dismiss, alleging that plaintiff's claims were barred under the doctrine of res judicata. On November 12, 2010, the court granted Lantsberg and FGAG's motion to dismiss, finding "that the claim was previously settled in bankruptcy court."

{¶ 11} It is from this order that plaintiff appeals, raising the following assignment of error:

{¶ 12} "I. The trial court erred in finding in favor of defendant/appellee on their motion to dismiss."

{¶ 13} "A bankruptcy plan confirmed by a bankruptcy court has the effect of a judgment rendered by a state or district court. 'Any attempt by the parties [to the bankruptcy] to relitigate any of the matters that were raised or could have been raised [in the bankruptcy proceeding] is barred by the doctrine of *res judicata*.' A judgment in bankruptcy court bars a subsequent suit if (1) both cases involve the same parties; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior decision was a final judgment on the merits; and (4) the same cause of action is at issue in both cases." *Jungkunz v. Fifth Third Bank* (1994), 99 Ohio App.3d 148, 151, 650 N.E.2d 134 (internal citations omitted).

{¶ 14} In the instant case, plaintiff challenges only the first condition, that "both cases involve the same parties." It is undisputed that the bankruptcy discharge is a final judgment rendered by a court of competent jurisdiction, and that the cause of action is the fraudulent transfer from the Greenspans to Lantsberg.

{¶ 15} Specifically, plaintiff argues that neither he, nor Lantsberg, nor FGAG were parties to the bankruptcy proceeding. Ohio law, however, holds otherwise.

{¶ 16} "Numerous courts have held that in the context of bankruptcy matters, not only formally named parties, but all participants in the bankruptcy proceedings, are barred by *res*

*judicata* from asserting matters they could have raised in the bankruptcy proceedings." *Federated Mgt. Co. v. Latham & Watkins* (2000), 138 Ohio App.3d 815, 823, 742 N.E.2d 684.

{¶ 17} Creditors and those in privity with a party to a bankruptcy proceeding are also considered parties to the bankruptcy action for res judicata purposes. *Sanders Confectionery Products, Inc. v. Heller Fin., Inc.* (C.A.6, 1992), 973 F.2d 474, 481. "The Bankruptcy Code contains a strong preference for final resolution of all claims involving the debtor, largely in order for the debtor to obtain a fresh start. To release creditors and equity security holders from the bonds of res judicata would allow them to launch collateral attacks on confirmed plans, undermining the necessary ability of bankruptcy courts to settle all of the claims against the debtor. To interpret the term 'party' narrowly would also run counter to the provisions in the Code which outline the effect of plans and offer methods for challenging the bankruptcy orders." Id.

{¶ 18} Plaintiff was a creditor in the Greenspans' bankruptcy proceeding. Therefore, plaintiff is included in the expanded definition of "party" to that proceeding for res judicata purposes. *Federated Mgt. Co. v. Coopers & Lybrand*, Franklin App. No. 09AP-204, 2004-Ohio-6977, ¶13 (recognizing that "[c]reditors in a bankruptcy proceeding are considered 'parties' for res judicata purposes").

{¶ 19} Lantsberg, as the transferee in the fraudulent conveyance, was a party to the Greenspans' bankruptcy proceeding insomuch as the court order settling the fraudulent

transfer claim expressly barred further action against Lantsberg regarding this issue. See *Countywide Petroleum Co. v. Huntington Capital Invest. Co.*, Cuyahoga App. No. 92778, 2010-Ohio-155 (concluding that the appellees were "released parties" under a bankruptcy settlement agreement, which barred the appellant from subsequently alleging fraudulent transfer claims). Furthermore, plaintiff failed to challenge the settlement of the fraudulent transfer claim, despite the opportunity to do so during the bankruptcy proceeding.

{¶ 20} FGAG is a limited liability company in which Lantsberg holds a 95% interest and the Greenspans hold a 5% interest. FGAG held title to the real property bought with the money that was fraudulently transferred. In *Sanders Confectionery Products*, the court held that privity in the sense of res judicata "means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." As Lantsberg and the Greenspans were the sole shareholders of FGAG, they were in privity with FGAG. *Sanders*, 973 F.2d, at 481.

{¶ 21} In *Sanders*, a board member and the president of corporation one, which was the parent company of corporation two, were found to be in privity with corporation two. Because of this privity, the board member and the president were barred by the doctrine of res judicata from bringing claims that should have been raised in corporation two's prior bankruptcy action. Id. The *Sanders* court held that "[t]hese positions of power allowed them to control the actions of [corporation two]." Id. See, also, *Leonard v. Bank One*

*Youngstown, Ohio* (Dec. 24, 1997), Mahoning App. No. 96-CA-42 (holding that the president, secretary, and sole shareholder of a corporate entity was in privity with that corporate entity in a bankruptcy proceeding, and res judicata applied to bar the president from filing a subsequent lender liability action against a creditor of the corporate entity).

{¶ 22} As the parties in the instant case — plaintiff, Lantsberg, and FGAG — were also parties to the Greenspans' bankruptcy proceeding under the expanded definition in *Sanders*, plaintiff's claims concerning the fraudulent transfer are barred by res judicata. Accordingly, the court did not err in granting the motion to dismiss and plaintiff's sole assignment of error is overruled.

Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

JAMES J. SWEENEY, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
EILEEN A. GALLAGHER, J., CONCUR